**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny Lee HANSLEY, a/k/a Johnnie Lee Hansley, Glenn Hansley, Ray Bennett, Bobby Riley, Earl Jackson, Defendants–Appellants.**

No. 91–4169.

United States Court of Appeals,
Eleventh Circuit.

June 14, 1995.

Rehearing Denied July 27, 1995.

710

J. James Allen, Jacksonville, FL, for J. Hansley.

Neal Betancourt, Jacksonville, FL, for G. Hansley.

James H. Burke, Asst. Federal Public Defender, Jacksonville, FL, for R. Bennett.

Garrett Barket, Jacksonville, FL, for B. Riley.

Robert H. Trachman, Fort Lauderdale, FL, for E. Jackson.

James Klindt, Asst. U.S. Atty., Jacksonville, FL, for the U.S.

Before HATCHETT, Circuit Judge, CLARK, Senior Circuit Judge, and YOUNG *, Senior District Judge.

HATCHETT, Circuit Judge:

In this appeal, we affirm the convictions and sentences of all appellants, except Earl Jackson. As to Jackson, we affirm his conviction, but remand to the district court for resentencing.

A jury convicted the appellants, Johnny Lee Hansley, Glenn Hansley, Bobby Riley, Ray Bennett, and Earl Jackson for their involvement in a conspiracy to distribute crack cocaine.[1] Hansley, Glenn Hansley, and Riley appeal their convictions. Because all of their arguments are meritless, we affirm their convictions without discussion.[2] Hansley, Riley, Bennett, and Jackson appeal their sentences. We affirm the sentences of Hansley, Riley, and Bennett; we, however, vacate Jackson's sentence and remand for further proceedings.

## FACTS

Hansley led a conspiracy that imported crack cocaine from south Florida and distributed it in Hazelhurst, Georgia. Riley and Jackson were the conspiracy's sources for the crack cocaine in south Florida. Hansley usually sent a courier to obtain the drugs.

Ellis Sellers, one of Hansley's couriers, made approximately fifteen trips to south Florida to purchase cocaine. Hansley usually gave Sellers about $9000 to make the purchase, and Sellers usually returned with approximately the same amount of cocaine. On one trip, however, Hansley gave Sellers approximately $24,000; on this occasion, Sellers returned with a larger quantity of drugs. On June 2, 1990, when Florida law enforcement authorities arrested Sellers while he was returning from one of his routine trips, the officers found him to be in possession of approximately 272 grams of crack cocaine.

Bennett and Glenn Hansley were also couriers. On one trip, authorities pulled their car over and found them to be in possession of $15,000. Authorities also pulled Bennett over on two other trips. On one trip they found $9,718; on the other, they found $7,800.

On September 29, 1990, when Hansley attempted to travel to south Florida, law enforcement authorities stopped him at the Jacksonville International Airport as he was attempting to catch a flight to Miami. The authorities found Hansley in possession of $13,000.

Law enforcement authorities then began to infiltrate the conspiracy. In October 1990, an undercover agent repeatedly met with Hansley at his residence to discuss the possibility of bringing drugs from south Florida to

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

1. We will refer to Johnny Lee Hansley as Hansley.

2. Glenn Hansley and Riley contend that the government presented insufficient evidence to sustain their convictions. Hansley contends that the district court erred in failing to suppress evidence seized from: (1) his person as a result of an airport stop; and (2) his residence pursuant to a search warrant.

Hazelhurst. While at Hansley's residence, the undercover agent observed various drug ledgers. Then, on November 9, 1990, authorities arrested Bennett on a return trip from south Florida, and found him in possession of 278 grams of crack cocaine.

The conspiracy finally came to an end in March 1991, when law enforcement officers executed a search warrant at Hansley's residence. The officers found, among other things, large sums of cash, various incriminating documents, and a Rossi .38 caliber revolver.

## PROCEDURAL HISTORY

On March 28, 1991, a grand jury returned a three-count indictment against the appellants. Count I charged all of the appellants with conspiring to distribute crack cocaine from 1985 to 1991, in violation of 21 U.S.C. § 846. Count II charged Hansley and Jackson with the substantive offense of possessing crack cocaine with the intent to distribute on June 2, 1990, in violation of 21 U.S.C. § 841(a)(1). Count III charged Hansley and Bennett with the substantive offense of possessing crack cocaine with the intent to distribute on November 9, 1990.

On September 6, 1991, the government filed an information, pursuant to 21 U.S.C. § 851, notifying Bennett that he faced a possible mandatory term of life imprisonment because he had three prior felony drug convictions: (1) a May 26, 1981 Georgia conviction for possessing drugs; (2) a March 20, 1989 Georgia conviction for possessing drugs; and (3) an April 24, 1991 Florida conviction for trafficking in cocaine.

Trial commenced on September 9, 1991. One week later, the jury convicted the appellants on all three counts. The United States Probation Office then prepared a presentence report (PSR) for each appellant. The PSRs stated that the appellants "had reasonably foreseeable knowledge [that] at least 5 kilograms of cocaine base" were involved in the conspiracy. As a result, the PSRs set the appellants' base offense levels at forty,

pursuant to U.S.S.G. § 2D1.1(a)(3).[3] Hansley's PSR also assessed him: (1) a two-level increase for possessing a firearm during the commission of the offense; and (2) three additional criminal history points because he committed the instant offenses while serving probation and less than two years after he was released from custody.

Hansley and Jackson filed objections to their base offense levels, arguing that the five-kilogram total was incorrect. Hansley also objected to the two-level increase and to the three additional criminal history points attributed to him. The government filed a response to their objections.

The district court held a sentencing hearing on November 22, 1991. At the hearing, Hansley and Jackson articulated their objections to the five-kilogram calculation. In response, the district court held:

[H]aving presided over the trial of this matter, having considered the arguments of counsel, the objections raised to the presentence investigation report, and the Government's sentencing memorandum, the Court finds that it is reasonably foreseeable that each of the conspirators in this conspiracy knew that there was at least a minimum of 5 kilograms, certainly between 5 and 15, and in all probability exceeding 15 kilograms of crack that were distributed or transported from Miami to Hazelhurst, Georgia and thereby distributed in Hazelhurst, Georgia. The Court therefore finds that there was ample justification for the probation officer's calculation of the 5 to 15 kilograms.

The district court then sentenced Jackson to 400 months imprisonment based on a total offense level of forty-two and a criminal history category of III. After rejecting Hansley's other objections, the district court sentenced him to life imprisonment based on a total offense level of forty-three and a criminal history category of III.

Also at the hearing, Riley, who had not filed any substantive challenges to his PSR, failed to make any objections when given the opportunity. Accordingly, the district court

---

**3.** Under the 1991 United States Sentencing Guidelines, section 2D1.1(a)(3) provided for a base offense level of forty if a defendant was accountable for "[a]t least 5 KG but less than 15KG of Cocaine Base."

sentenced him to 328 months imprisonment based on the PSR's calculations of a total offense level of forty and a criminal history category of I.

Finally, at the hearing, Bennett argued that his three prior felony drug convictions were not sufficient to sustain a mandatory minimum term of life imprisonment under 21 U.S.C. § 841(b)(1)(A) because his 1989 Georgia conviction and his 1991 Florida conviction were not "spatially or temporally distinct" from the instant federal charges. Furthermore, he argued that "the [19]81 and the [19]89 [Georgia] convictions were for simple possession of drugs." The district court, however, found "it mandatory ... to enhance the sentence on both counts as a result of the two prior Georgia convictions." Accordingly, the district court sentenced Bennett to life imprisonment.

## CONTENTIONS

Hansley, Jackson, and Riley contend that, when calculating their base offense levels, the district court clearly erred in finding that the conspiracy involved more than five kilograms of crack cocaine. Jackson and Riley further contend that even if the conspiracy involved more than five kilograms of crack cocaine, they are only personally responsible for a lesser quantity.

The government responds that the evidence at trial supported the district court's finding that more than five kilograms of crack cocaine were involved in the conspiracy. The government also argues that Hansley, who was the leader of the conspiracy, is responsible for this entire quantity, and that Jackson, who was a primary source of the drugs, was personally involved in over five kilograms. Moreover, Jackson and Riley should have reasonably foreseen that over five kilograms were involved. The government also asserts that Riley waived this contention because he did not object at the time of sentencing.

Hansley also challenges his sentence on two other grounds. First, he claims that the district court incorrectly applied a two-level increase for possessing a firearm, arguing that he did not possess the firearm during the commission of the conspiracy. The government contends that the firearm was found in his residence, which was a center of drug activity. Second, Hansley argues that he did not commit the instant offenses while on probation, nor did he commit them within two years of being released from custody; therefore, the district court erred in assessing him three additional criminal history points. The government responds that the record clearly shows otherwise.

Finally, Bennett contends that a mandatory minimum term of life imprisonment pursuant to section 841(b)(1)(A) was not warranted based on his two prior Georgia convictions because one of the convictions was an overt act of the instant conspiracy and both convictions only involved the simple possession of drugs. The government asserts that case law and the clear language of the statute render his arguments meritless.

## ISSUES

We discuss the following issues: (1) whether, in determining their base offense levels, the district court clearly erred in attributing at least five kilograms of crack cocaine to Hansley, Jackson, and Riley; (2) whether the district court properly assessed a two-level increase and three additional criminal history points to Hansley; and (3) whether Bennett's prior convictions support his mandatory term of life imprisonment.

## DISCUSSION

### A. The Five–Kilogram Claims

"Calculating the base offense level for drug distribution requires a determination of the quantity of illegal drugs properly attributable to a defendant.... [T]he Guidelines require a district court to attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme of which that defendant's offense of conviction was a part." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir.1995); *United States v. Butler*, 41 F.3d 1435, 1442–43 (11th Cir.1995); *see also* U.S.S.G. §§ 2D1.1 and 1B1.3. In making this determination, "the district court must first make individualized findings concerning the scope of criminal activity under-

taken by a particular defendant. Once the extent of a defendant's participation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation." *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir.1993) (citations omitted). In order to comply with this individualized standard, we will review the appellants' claims separately. In conducting this review, we apply the clearly erroneous standard. *See Lawrence*, 47 F.3d at 1565; *Butler*, 41 F.3d at 1442.

### 1. Hansley

■ The district court did not make individualized findings as to Hansley; it simply stated that all of the conspirators could have reasonably foreseen that at least five kilograms of crack cocaine were involved. Nevertheless, we may uphold Hansley's sentence "if the record supports the amount of drugs attributed to" him. *Ismond*, 993 F.2d at 1499.

The record clearly demonstrates that Hansley was the leader of this conspiracy, and that all of the crack cocaine involved should be attributed to him. Indeed, Hansley does not dispute his leadership role, and appears to concede that he should be held accountable for all of the crack cocaine. He, however, maintains that the district court clearly erred in determining that the quantity of drugs involved in the conspiracy totaled more than five kilograms.

■ The record shows, at the very least, twenty attempted trips from Hazelhurst to south Florida for the purpose of purchasing

drugs: fifteen for Sellers; one for Bennett and Glenn Hansley; three more for Bennett; and one for Hansley. Also, "the record reveal[s] sufficient circumstantial [and] direct evidence" to show that each of these trips was an attempt to purchase approximately 272 grams of crack cocaine. *Butler*, 41 F.3d at 1447.[4] Thus, based on these figures, the conspiracy involved an attempt to distribute over five kilograms of cocaine base.[5] Because this entire quantity is attributable to Hansley, the district court did not clearly err in setting his base offense level at forty.

### 2. Jackson

■ Unlike Hansley, Jackson was not the leader of this conspiracy. As a result, he argues that he is not responsible for all of the crack cocaine. Furthermore, Jackson asserts that he was only personally involved in a small quantity, and he could not have reasonably foreseen that more than five kilograms were involved. At the sentencing hearing, the district court did not make any individualized findings concerning the scope of Jackson's criminal activity in the conspiracy.

"We have reviewed the record and conclude that, without individualized findings, the conspiracy's entire output cannot be attributed to [Jackson]." *Ismond*, 993 F.2d at 1499. While the record reveals that Jackson was one of Hansley's sources in south Florida, and that he provided couriers with crack cocaine on several occasions, it does not reveal on how many occasions he did so, and whether he could have reasonably foreseen the conspiracy's entire output. "[W]ithout

---

**4.** In *Butler* (and *Lawrence*), the district court accepted the findings in the PSR, which calculated the total quantity of drugs attributable to each conspirator based on the amount transacted on one random day. On appeal, this court remanded for resentencing because no evidence showed that the day used "was a reliable proxy for all of the other days in the conspiracy." *Butler*, 41 F.3d at 1447. *Butler* is distinguishable, however, because ample evidence in this record supports the use of 272 grams as "a reliable proxy for all of the other [trips] in the conspiracy." *Butler*, 41 F.3d at 1447. For example, officers arrested Sellers while attempting to return 272 grams of crack cocaine to Hansley. He testified that this was the amount he usually transported. Likewise, officers arrested Bennett while attempting

to return 278 grams of crack cocaine to Hansley. Moreover, Sellers testified that he usually delivered around $9000 to obtain the usual amount of 272 grams. The other couriers, who were pulled over, carried in the vicinity of $9000 on their trips to purchase crack cocaine in south Florida.

**5.** 20 trips × .272 kg/trip = 5.44 kg. Although this figure is close to the five-kilogram threshold, we note that the record indicates that it is likely that more than twenty trips were made. Furthermore, the record indicates that some trips, such as one Sellers made, may have involved considerably more than 272 grams of crack cocaine.

individualized findings concerning the scope of [Jackson's] involvement with the conspiracy, it cannot be determined that [he] should be liable for some quantity less than all." *Ismond*, 993 F.2d at 1499. Likewise, if Jackson is not liable for the entire output, individual findings need to be made as to the quantity for which he is accountable.

Thus, we remand to the district court for further factual findings. We do not suggest that Jackson could not have reasonably foreseen that more than five kilograms of crack cocaine were involved, or that he himself was involved in less than five kilograms. Rather, we simply find that we are unable to make these determinations without individualized findings.

### 3. Riley

█ Like Jackson, Riley was not a leader of this conspiracy. Thus, Riley makes the same arguments as Jackson: he could not have foreseen the conspiracy's output, and he was only personally involved in a minimal amount of crack cocaine. Unfortunately, Riley has waived this argument.

Unlike Hansley and Jackson, Riley did not file an objection to the PSR's calculation of his base offense level. Then, at the sentencing hearing, the district court offered Riley multiple chances to articulate this objection. He did not do so. Nonetheless, Riley now argues that he has preserved this claim, pointing to the following comment which his counsel made at the sentencing hearing: "Your Honor, I'd like to make a brief statement on behalf of my client.... [A]ny sentence given Bobby Riley should be based solely on any involvement of which he was involved and convicted and not based on the far-reaching and very detrimental negative effects of any drug trafficking conspiracy."

We do not find that the above comment preserved this issue for appeal. "Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal." *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill*, 984 F.2d 1136 (11th Cir.1993) (*en banc*). When the district court asked for objections, Riley failed to present any. The above comment, which counsel made in the middle of a general statement on Riley's behalf, does not constitute an objection. Thus, Riley waived this contention.

█ This court, however, will "consider sentence objections raised for the first time on appeal under the plain error doctrine to avoid 'manifest injustice.' " *United States v. Newsome*, 998 F.2d 1571, 1579 (11th Cir. 1993) (quoting *United States v. Neely*, 979 F.2d 1522, 1523 (11th Cir.1992)), *cert. denied*, —— U.S. ——, 114 S.Ct. 734, 126 L.Ed.2d 698 (1994). The district court erred when it failed to make individualized findings as to Riley's involvement in the conspiracy. The issue, however, is whether this mistake constitutes plain error. Plain error exists where the mistake is "so obvious that the failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Newsome*, 998 F.2d at 1581 (quoting *United States v. Chaney*, 662 F.2d 1148, 1152 (5th Cir. Unit B 1981)). We cannot say that the district court's failure to make individualized findings reaches this high standard of egregious error. Thus, we refuse to entertain Riley's contention.

### B. Hansley's Other Claims

█ Hansley challenges his sentence on two other grounds. In considering Hansley's claims, we will review the district court's application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error. *See United States v. Hall*, 46 F.3d 62, 63 (11th Cir.1995).

### 1. Increase for Possessing a Firearm

█ Hansley argues that the district court erred in applying U.S.S.G. § 2D1.1(b)(1), which provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." The district court applied this specific offense characteristic because when officers executed the search warrant for Hansley's residence, they found a firearm. At his sentencing hearing, Hansley argued that "the firearm that was seized from his

house [was not] related to the commission of the offense." The government responded that the officers executing the warrant found the gun in the house near several drug-related items.

In *Hall*, this court explained that a section 2D1.1(b)(1) "adjustment should be applied if the weapon was present, *unless* it is clearly improbable that the weapon was connected with the offense." *Hall*, 46 F.3d at 63 (quoting U.S.S.G. § 2D1.1, comment. (n. 3) (1991)). Thus, "[o]nce the prosecution has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." *Hall*, 46 F.3d at 63. In *Hall*, this court held that the two-level increase was proper because "[t]he proximity of the handgun to several drug-related objects, located in the house where conversations concerning the [drug scheme] occurred, sufficiently show that the handgun was possessed during the offense. Furthermore, [the defendant] presented no evidence to suggest that a connection between the handgun and the [drug scheme] was clearly improbable." *Hall*, 46 F.3d at 64.

Likewise, in this case, the government showed that the agents found a firearm and other drug-related items in Hansley's residence, where he engaged in conspiratorial conversations. Furthermore, Hansley presented no evidence to suggest that a connection between the firearm and his drug conspiracy was clearly improbable. Thus, we find that the two-level increase, pursuant to section 2D1.1(b)(1), was proper.

### 2. Criminal History Points

In placing Hansley in a criminal history category of III, the district court accepted the calculations in the PSR, which assessed him a total of six criminal history points. Specifically, the PSR assessed Hansley one point for a 1990 conviction for possession of marijuana, pursuant to U.S.S.G. § 4A1.1(c). It also assessed him, pursuant to U.S.S.G. § 4A1.1(b), two more criminal history points for a January 20, 1986 conviction for driving under the influence of alcohol. Hansley, who was a habitual offender, received a two-year sentence and two years of probation for this offense.[6] Thus, the PSR assessed two additional points, pursuant to U.S.S.G. § 4A1.1(d), because Hansley committed the instant offense while serving the above probation. Likewise, the PSR assessed one additional point, pursuant to U.S.S.G. § 4A1.1(e), because Hansley committed the instant offense less than two years after release from the above imprisonment.

Hansley argues that the assessment of these last three points was erroneous because he only began participating in this conspiracy in 1989; therefore, he was no longer serving probation, and he had been out of custody for over two years. Upon reviewing the record, however, we find that the district court did not clearly err in finding that Hansley's conspiracy "started, at the very latest, the early part of 1986." As a result, the district court properly assessed the three additional points because Hansley committed the instant offense while serving probation and within two years of his imprisonment.

### C. Bennett's Claim

Bennett received a mandatory minimum term of life imprisonment because he committed the instant violations after having received "two or more prior convictions for a felony drug offense." 21 U.S.C. § 841(b)(1)(A). In imposing a mandatory term of life imprisonment, the district court relied on two prior Georgia convictions, one in 1981 and the other in 1989, for possession of drugs. Bennett challenges his mandatory term of life imprisonment on two grounds.

### 1. Relatedness of 1989 Conviction to Instant Offense

Bennett first argues that the district court should not have used the 1989 conviction to enhance his sentence because that conviction was related to an overt act of the

---

6. After serving approximately five months of this sentence, authorities released Hansley from custody on June 16, 1986; his sentence was then amended to four years of probation. Hansley eventually received an early termination from probation on July 1, 1988.

instant conspiracy. Thus, he contends that the 1989 conviction is not distinct enough in time to be considered a prior, unrelated conviction. "Because the question of whether prior convictions [are] related or unrelated for purposes of section 841(b)(1)(A) involves a factual inquiry, we review the district court's decision for clear error." *United States v. Rice*, 43 F.3d 601, 606 (11th Cir.1995).

In *Rice*, the defendant argued that his multiple prior convictions should be considered a single prior conviction for purposes of section 841(b)(1)(A) because they were all part of one overall conspiracy. This court, however, rejected his argument, holding that "the separate criminal acts for which [the defendant] was convicted, whether or not part of an over-arching conspiracy ..., are not 'related' convictions justifying lesser penalties under section 841(b)(1)(A) because they are separate in time and locale and were acts requiring separate planning and execution." *Rice*, 43 F.3d at 608. Thus, under *Rice*, the threshold issue is whether a prior conviction is "separate in time and locale;" the fact that prior convictions may have resulted from criminal conduct in furtherance of one overall conspiracy is, for the most part, meaningless.

We recognize that *Rice* is slightly distinguishable from the facts of this case, for we must determine whether a previous conviction is sufficiently related to the *instant conspiracy* so as not to be counted as a prior offense for the purposes of section 841(b)(1)(A). Nonetheless, we find *Rice* persuasive, particularly since it relied on cases that address the precise issue that we face. For example, *Rice* relied on *United States v. Garcia*, 32 F.3d 1017 (7th Cir.1994), where the Seventh Circuit had to determine whether the defendant's prior 1991 state conviction was sufficiently related to his instant federal conviction for participating in a conspiracy from 1990 to 1992. The Seventh Circuit held that a section 841(b)(1)(A) enhancement was proper because after the defendant's state "conviction for possession of cocaine became final, he continued to engage in [the] drug-related [conspiracy] for eighteen months." *Garcia*, 32 F.3d at 1020; *see also United States v. Hughes*, 924 F.2d 1354 (6th Cir. 1991) (also cited in *Rice*, and standing for the

same proposition as *Garcia*). The Seventh Circuit reasoned that "the purpose of the mandatory minimum enhancement is to target recidivism, [thus] it is more appropriate to focus on the degree of criminal activity that occurs after a defendant's conviction for drug-related activity is final rather than when the conspiracy began." *Garcia*, 32 F.3d at 1019–20.

Bennett's Georgia conviction became final on March 20, 1989. He, however, continued to engage in the Hansley conspiracy until his arrest on November 9, 1990. Ironically, like the defendant in *Garcia*, Bennett continued to engage in drug-related, conspiratorial activity for over eighteen months. Although Bennett's 1989 conviction may have resulted from criminal conduct taken in furtherance of the Hansley conspiracy, he continued to engage in the conspiracy for a significant period of time. Thus, the district court did not clearly err in enhancing Bennett's sentence based on his 1989 conviction.

## 2. Prior Convictions for Simple Possession

 Bennett also argues that his two prior convictions were mere possession offenses, and that Congress did not intend for such simple violations to stand as a predicate for a mandatory term of life imprisonment under section 841(b)(1)(A). Bennett's contention presents an issue of "[s]tatutory interpretation[, which] is a question of law subject to *de novo* review." *United States v. Harden*, 37 F.3d 595, 600 (11th Cir.1994) (construing enhancement provision in section 841(b)(1)(A)).

In 1991, when the district court sentenced Bennett, the definition of a prior "felony drug offense" appeared in section 841(b)(1)(A). The definition provided:

the term "felony drug offense" means an offense that is a felony under any provision of this subchapter or any other Federal law that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances or a felony under any law of a State or a foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances.

21 U.S.C. § 841(b)(1)(A) (1990).[7] The definition does not contain any language excluding state felonies for simple possession. Thus, under the plain language of the statute, it appears that a "felony drug offense" includes *any* criminal conduct relating to narcotics, including simple possession, which a state has proscribed as a felony.[8]

Furthermore, in a different recidivist provision, Congress has used the language *"serious* drug offense" as opposed to "felony drug offense." *See* 18 U.S.C. § 924(e) (emphasis added). In defining "serious drug offense," section 924(e) limits such convictions to "offense[s] under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance...." 18 U.S.C. § 924(e)(2)(A)(ii). Thus, the definition of "serious drug offense" excludes state convictions for simple possession. We can only conclude that if Congress meant to place a similar limitation on section 841(b)(1)(A), it would have used the "serious drug offense" language and it would have provided a similar definition. Thus, we reject Bennett's second argument and affirm his life sentence.

### CONCLUSION

In sum, we affirm the convictions of Hansley, Glenn Hansley, and Riley. We also affirm the sentences of Hansley, Riley, and Bennett. We, however, vacate Jackson's sentence, and remand for further proceedings.

AFFIRMED in part, REVERSED in part and REMANDED.

GEORGE C. YOUNG, Senior District Judge, concurring in part, and dissenting in part:

I concur with all of Judge Hatchett's well-reasoned opinion except that I would vacate the sentence of Bobby Riley and remand for the district court to make individual findings as to the quantity of crack cocaine for which Bobby Riley is accountable.

---

7. In 1994, Congress removed the definition of "felony drug offense" from section 841(b)(1)(A), and placed it in 21 U.S.C. § 802. Congress also altered the definition slightly. Now, "[t]he term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or re-stricts conduct relating to narcotic drugs, marihuana, or depressant or stimulant substances." 21 U.S.C. § 802(43).

8. Bennett concedes that his prior possession convictions constituted felonies under Georgia law.