[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15297
Non-Argument Calendar

_____

D. C. Docket No. 06-60350-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN BAPTISTE,
a.k.a. "Kelvin",

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 9, 2009)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Kevin Baptiste ("Baptiste") appeals his 160-month sentence after pleading guilty to drug-trafficking offenses. On appeal, he challenges the district court's application of a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and its failure to award him a minor-role reduction under U.S.S.G. § 3B1.2(b). For the reasons set forth below, we affirm.

## I.

A federal grand jury returned an indictment against Baptiste and several codefendants – including his brother, Gary Baptiste ("Gary") – charging Baptiste with: conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A) (Count 1); and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 26).

The government prepared a factual statement in support of Baptiste's anticipated guilty plea, which provided in pertinent part:

> During the time period charged in the indictment, Defendant Kevin Baptiste assisted his brother and co-defendant Gary Baptiste in the distribution and possession of cocaine. Defendant Kevin Baptiste assisted Gary in a number of ways including distributing cocaine, collecting money for cocaine sales, storing drugs and drug proceeds in his residence and speaking with a source of supply regarding per kilogram price negotiations.
>
> In November 2006, Gary traveled to Haiti for a period of several days. While he was gone, Defendant Kevin Baptiste handled all of the

cocaine sales and money collections on Gary Baptiste's behalf. This included collecting money for co-defendant Luckner Monestine for cocaine, distributing two kilograms of cocaine to him on November 4, 2006, and contacting the supplier of this cocaine to arrange for a price reduction when it was determined that a portion of the cocaine was wet. Kevin Baptiste also distributed cocaine to other persons during Gary's absence.

On December 12, 2006, officers executed a search warrant at the residence of Kevin Baptiste. In Defendant Kevin Baptiste's bedroom, officers located $57,505, a Smith and Wesson handgun and a shotgun.

At the plea hearing, Baptiste, through counsel, admitted the facts contained in the proffer, including the fact that the guns and money were found in his bedroom. Baptiste thereafter pled guilty to both Counts 1 and 26.

The probation officer prepared a pre-sentence investigation report ("PSI") and calculated Baptiste's applicable guideline range as follows. The probation officer determined that Baptiste was responsible for at least 50, but less than 150, kilograms of cocaine, giving him a base offense level of 36. The probation officer applied a two-level enhancement for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1). She also applied a three-level reduction for acceptance of responsibility based on a written statement made by Baptiste, which read in part:

I admit that I assisted my brother, Gary Baptiste with the activities of distributing cocaine. When Gary was out of town, he would have me distribute the cocaine and collect monies on his behalf. My mom's house was used as the location where the cocaine would be picked up and where monies from drug sales would be collected. I further admit and acknowledge that I negotiated a price reduction [for] some wet

3

cocaine that was previously sold on behalf of my brother, Gary Baptiste.

In this respect, the PSI reported that Baptiste resided at his mother's house and that 172.8 grams of cocaine and 17.4 grams of marijuana were discovered there during the execution of the search warrant. The probation officer also noted that no role reduction was warranted because, although Gary and several other co-conspirators were "large quantity narcotics" suppliers or distributors, Baptiste "worked at the direction of his brother Gary Baptiste as a narcotics supplier." The probation officer ultimately determined that Baptiste had a criminal history category of IV which, when coupled with his total offense level of 35, produced an applicable guideline range of 235 to 293 months' imprisonment.

Baptiste raised three objections to the PSI. First, he argued, without explanation, that he was responsible for 5 kilograms or less of cocaine. The government responded that the evidence at Gary's trial demonstrated that Gary participated in telephone calls related to 92.5 kilograms of cocaine and, because Baptiste acted as Gary's assistant, he should be held responsible for this drug quantity as well. Second, Baptiste objected to the firearm enhancement on the ground that the firearms did not belong to him. The government responded, and the probation officer agreed, that the enhancement was appropriate because, regardless of whether the firearms "belonged" to Baptiste, they were discovered

4

"in close proximity to several thousand dollars and [were] located within Kevin's bedroom and at the residence where the defendants stored the cocaine . . . and conducted their drug transactions." Finally, Baptiste argued that he should have received a minor-role reduction under U.S.S.G. § 3B1.2(b). The government and the probation officer responded that such a reduction was inappropriate because Baptiste assisted his brother in the sale and storage of multiple kilograms of cocaine.

At sentencing, the government clarified that the evidence at Gary's trial demonstrated that Gary was directly responsible for 92.5 kilograms of cocaine, but Baptiste personally handled only 14.625 kilograms of that amount. Although the government argued that Baptiste should be held accountable for all 92.5 kilograms, it pointed out that, if the court found Baptiste accountable only for the 14.625 kilograms, then this would undermine his minor-role objection because the court had to measure Baptiste's role against the conduct for which he was held accountable. In addressing the drug quantity issue, defense counsel acknowledged that Baptiste handled cocaine distribution for Gary while he was out of town, but he emphasized that Baptiste could not do anything without first calling Gary and getting his permission. With respect to the firearm enhancement, defense counsel reiterated that the firearms did not belong to Baptiste, and he also asserted that the

5

firearms were found in a guest room, not Baptiste's bedroom, to which the government responded by pointing to the factual proffer supporting the guilty plea.

The court ultimately sustained Baptiste's drug-quantity objection in part, finding that he was accountable only for the 14.625 kilograms of cocaine with which he was directly involved, thereby reducing his base offense level from 36 to 32. The court, however, upheld the firearm enhancement, finding that "the two firearms were found in the defendant's bedroom where the defendant stored both cocaine and drug proceeds." In addition, the court found that Baptiste failed to meet his burden with respect to a minor-role reduction. In light of the above rulings, the court determined that Baptiste had an applicable guideline range of 151 to 188 months' imprisonment and, after hearing argument from the parties, sentenced Baptiste to 160 months' imprisonment on both counts, to run concurrently.

## II.

"The Court reviews the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts de novo." United States v. Anton, 546 F.3d 1355, 1359 (11th Cir. 2008), cert. denied, (U.S. Apr. 20, 2009) (No. 08-1183). "For sentencing purposes, possession of a firearm involves a factual finding, which we review for clear error." United States v. Stallings, 463

F.3d 1218, 1220 (11th Cir. 2006). We also review for clear error the district court's determination of a defendant's role in an offense. United States v. DeVaron, 175 F.3d 930, 937-38 (11th Cir. 1999) (en banc).

## A. Firearm Enhancement

The Sentencing Guidelines provide for a two-level enhancement to a defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed" during a drug-trafficking offense. U.S.S.G. § 2D1.1(b)(1). The Guidelines instruct the district court to apply this enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). As a result, we have held that the government has the initial burden to show by a preponderance of the evidence that the firearm was present at the site of the charged conduct. United States v. Hall, 46 F.3d 62, 63-64 (11th Cir. 1995) (concluding that "presence of the weapon is all the Government need show"). "If the government is successful in meeting this initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was clearly improbable." Stallings, 463 F.3d at 1220 (quotation omitted).

In this case, the government met its burden to show that the firearms were present at the site of the charged conduct. This is so because the firearms were

7

found in the same house where Baptiste engaged in acts in furtherance of the drug-trafficking conspiracy. See United States v. Cooper, 111 F.3d 845, 847 (11th Cir. 1997) (stating that firearms are "present" for purposes of § 2D1.1(b)(1) when they are "found where acts in furtherance of the conspiracy [take] place"); United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995) (upholding the enhancement where the firearm was discovered in a house where the defendant "engaged in conspiratorial conversations"). Thus, Baptiste's assertion that the firearms did not belong to him is irrelevant to the analysis, and, in any event, it is undermined by his admission at the plea hearing that the firearms were found in his bedroom.

Thus, the burden shifts to Baptiste to demonstrate that a connection between the firearms and the conspiracy was clearly improbable. Stallings, 463 F.3d at 1220. He has failed to meet this burden because the factual proffer upon which his guilty plea was based established that the two firearms were found alongside $57,505 in cash and in the house out of which the drug conspiracy operated. Under the circumstances, the fact that there were no drugs found in the bedroom does not establish that a connection between the firearms and the drug conspiracy was clearly improbable. Indeed, the PSI reported that 172.8 grams of cocaine were found elsewhere in the house, and Baptiste does not dispute that the cash in his bedroom represented drug proceeds. Accordingly, we affirm the enhancement.

## B. Minor-Role Reduction

Under the Guidelines, a defendant may receive a two- to four-level reduction where his role in the offense can be described as minor, minimal, or somewhere in between.[1] U.S.S.G. § 3B1.2. The proponent of the downward adjustment bears the burden of establishing his role in the offense by a preponderance of the evidence. DeVaron, 175 F.3d at 934, 939, 946.

"[T]he district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." Id. at 941; accord United States v. Ryan, 289 F.3d 1339, 1349 (11th Cir. 2002) (measuring the defendant's role in relation to the conduct used to calculate his base offense level). "Otherwise, a defendant could argue that [his] relevant conduct was narrow for the purpose of calculating [his] base offense level, but was broad for determining [his] role in the offense. A defendant cannot have it both ways." DeVaron, 175 F.3d at 941. In other words, "[o]nly if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable – not a minor role in any

---

[1] A minor participant is entitled to a two-level reduction and is someone who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), comment. (n.5). A minimal participant is entitled to a four-level reduction and is someone who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G § 3B1.2(a), comment. (n.4). Defendants who are more than a minimal participant but less than a minor participant qualify for a three-level reduction. U.S.S.G. § 3B1.2.

larger criminal conspiracy – should the district court grant a downward adjustment for minor role in the offense." Id. at 944.

In this case, the district court held Baptiste accountable for 14.625 kilograms of cocaine at sentencing. Significantly, this drug quantity represented the amount of cocaine with which Baptiste was directly involved, and it did not include the all of the 92.5 kilograms of cocaine attributed to his brother Gary or the cocaine attributed to other members of the conspiracy. This fact is fatal to Baptiste's argument because he cannot show that he was a minor participant with respect to the drug-trafficking activities with which he was directly and personally involved. See United States v. Boyd, 291 F.3d 1274, 1276-78 (11th Cir. 2002) (upholding the district court's determination that "it would be a rare case indeed to find a defendant to be a minor participant in his own conduct if that's the only conduct he is being held accountable for"). In this respect, Baptiste admittedly distributed cocaine, collected money for cocaine sales, stored drugs and drug proceeds, and negotiated prices with suppliers. Moreover, Baptiste was held accountable for nearly 15 kilograms of cocaine, a fairly substantial amount, which also counsels against awarding him a minor-role reduction. See DeVaron, 175 F.3d at 943 (noting that the amount of drugs at issue is a material, and sometimes dispositive, factor in assessing the defendant's role).

Baptiste counters that he was a minor participant as compared to Gary and the other members of the conspiracy. With respect to Gary, defense counsel emphasized at sentencing that Baptiste took no action without first getting approval from Gary. However, this point highlights the undisputed fact that Baptiste personally handled all of the cocaine transactions while Gary was out of town. In light of Baptiste's direct involvement – and even if he was arguably less culpable than Gary in relation to this relevant conduct – it cannot be said that Baptiste was a minor participant. See id. at 944 ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants.").

With respect to the other co-conspirators, the PSI indicates that several were "large quantity narcotics" suppliers or distributors, but there is nothing in the record establishing that these individuals were involved in the relevant conduct for which Baptiste was held accountable. See id. ("[T]he district court may consider only those participants who were involved in the relevant conduct attributed to the defendant."). Thus, Baptiste has not shown that the court clearly erred by refusing to award him a minor-role reduction.

## III.

In sum, we conclude that the district court did not clearly err by applying the two-level firearm enhancement or declining to award Baptiste a minor-role reduction. Accordingly, we affirm.

**AFFIRMED.**