[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11240
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20421-PCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIX UTRA,
a.k.a. El Conde,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 30, 2011)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Felix Utra appeals his convictions and 41-month total sentence for

conspiracy to possess with the intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), 846, and possession with the intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D). He argues that the district court erroneously: (1) denied his motion to suppress; and (2) assigned him a base offense level of 20 under U.S.S.G. § 2D1.1(a)(5), (c)(1). For the reasons set forth below, we affirm Utra's convictions and sentences.

## I.

Utra was a cell leader within a large-scale wholesale narcotics organization led by Luis Castillo. Castillo became involved in marijuana trafficking as early as 2004, and investigators conducted wiretaps on his cell phones from December 2009 until May 2010. Over a series of phone calls in December 2009 and January 2010, Castillo and Utra discussed marijuana that Utra wanted Castillo to sell, meetings to allow Castillo to see marijuana samples, and the transfer of marijuana from Utra to Castillo.

On January 5, 2010, Utra and Castillo arranged a meeting regarding marijuana Castillo was considering buying from Utra. They met later that day, and agents followed Utra and pulled him over in a traffic stop after he left Castillo's house. Utra had half a pound of marijuana in his car. On January 20, 2010, Utra

2

and Castillo agreed to meet at a restaurant called Pollo Tropical so that Utra could bring Castillo a sample of marijuana. Utra drove a friend's, Juan Arcallo's, car to the meeting, and afterwards, he returned to Arcallo's house. Utra called Arcallo during or immediately following the meeting. After Utra left Arcallo's house, agents conducted a consensual search of the house and seized 1,678 grams of marijuana in heat-sealed plastic bags and an additional 17.1 grams of marijuana found in a kitchen drawer.

Utra was indicted on June 3, 2010, and on June 22, 2010, Denis Gulakowski, a Special Agent with the Drug Enforcement Administration, submitted an application for a search warrant to search Utra's house. According to the affidavit, a number of phone calls and several meetings took place between Utra and Castillo in December 2009 and January 2010. Utra still owned the house described in the search warrant, and the house was occupied when Gulakowski drove past it during the weekend of June 19-20, 2010. A magistrate judge issued the search warrant, and on June 23, 2010, officers arrested Utra and searched his house. While executing the arrest warrant, the officers found an open duffel bag containing marijuana in heat-sealed plastic bags approximately two feet from where Utra was arrested. The duffel bag contained 2,022 grams of marijuana. Utra had a handgun in his hand when the officers came upon him. After Utra was

arrested, the officers executed the search warrant, and they found scissors, a heat sealer, several cell phones, and a bottle containing marijuana clippings.

Utra filed a motion to suppress the evidence seized during the search of his home, arguing that there was no probable cause because the information in the affidavit was stale. The district court denied the motion to suppress as to the duffel bag, its contents, and the firearm because they were in plain view and properly seized during Utra's arrest. The court also denied the motion to suppress as to the items found during the execution of the search warrant. The court found that the information in the affidavit was not stale, and based on the nature of the crime, it was reasonable for the magistrate who issued the warrant to conclude that evidence likely would be found at Utra's house.

At trial, Gulakowski testified that a typical marijuana joint had, at most, one gram of marijuana in it and that at least 2,022 marijuana joints could have been made from the marijuana in the duffel bag.

In preparing the presentence investigation report ("PSI"), the probation officer calculated a base offense level of 20, pursuant to U.S.S.G. § 2D1.1(a)(5), because Utra's offense involved the possession with the intent to distribute between 40 and 60 kilograms of marijuana. Utra objected to the PSI, arguing that only 38.5 grams of marijuana should have been attributed to him and that his base

offense level should only have been 18 based on that amount. Specifically, the four pounds of marijuana found in Arcallo's house should not have been attributed to him because there was no evidence connecting him to that marijuana.

At the sentencing hearing, the government argued that Arcallo previously had been convicted for growing marijuana, Utra called him before and after the meeting at Pollo Tropical, Utra drove his car to the meeting at Pollo Tropical, he was a member of the conspiracy, and the marijuana found at his house was packaged for drug trafficking. The court stated that the marijuana was within the scope of the conspiracy and sentenced Utra to 41 months' imprisonment for Counts 1 and 2, to be served concurrently.

## II.

In reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and the "application of law to those facts *de novo*." *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir. 2000). "We construe the facts in the light most favorable to the party who prevailed below." *United States v. Hooshmand*, 931 F.2d 725, 735 (11th Cir. 1991). If there is a Fourth Amendment violation, we review the error to determine whether it was harmless or harmful. *United States v. Khoury*, 901 F.2d 948, 960 (11th Cir. 1990). An error is harmful where "there is a reasonable possibility that the evidence

complained of might have contributed to the conviction." *Id.* (quotation omitted). "In other words, if the jury might have relied on the unconstitutional evidence in reaching its verdict, then the error was harmful unless the other evidence of guilt was so overwhelming that the defendant suffered no prejudice from the admitted evidence." *Id.*

Search warrants must be supported by probable cause. U.S. Const. amend. IV. To establish probable cause, the government must show that it is "likely that the items being sought are in that place when the warrant issues." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (quotation omitted). The facts on which the government relies "must be timely, for probable cause must exist when the magistrate judge issues the search warrant." *Id.* "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." *Id.* Whether a search warrant rested upon stale information is a case-by-case determination, and in making this determination, "we may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id.* Where an affidavit does contain stale information, the government may overcome the flaw by updating, substantiating, or corroborating the stale facts. *Id.* at 450-51

6

(explaining that the updated information in the affidavit "supported the reasonable inference that criminal activity was continuing").

To prove that a defendant conspired to possess marijuana with the intent to distribute, the government must prove that: (1) a conspiracy existed; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly joined the conspiracy. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009). Furthermore, the object of the conspiracy must be "to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). To prove that a defendant possessed marijuana with the intent to deliver, the government must prove: "(1) knowledge; (2) possession; and (3) intent to distribute." *Garcia-Bercovich*, 582 F.3d at 1237.

We find this issue to be a very close call. Most of the information in the affidavit was approximately five months old.[1] However, the affidavit described a longstanding and extensive drug trafficking operation. Because error, if any, is subject to a harmless error analysis, we pretermit this question.

Finding overwhelming evidence of guilt, we affirm Utra's convictions. *See*

---

[1] We decline to review the denial of the motion to suppress as to the duffel bag, its contents, and the firearm because Utra does not challenge the court's finding that these items were properly seized during the execution of the arrest warrant. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that an issue not raised in an appellant's initial brief is abandoned).

*Khoury*, 901 F.2d at 960. The evidence showed that Utra and Castillo discussed marijuana that Castillo was considering buying from Utra and when Utra could get samples of the marijuana for Castillo, and they held meetings soon after these discussions. After one such meeting, marijuana was seized from Utra's car. Thus, the overwhelming evidence showed that: (1) Utra and Castillo agreed to conspire to distribute marijuana; (2) Utra knew about the conspiracy; and (3) Utra knowingly joined the conspiracy. *See Garcia-Bercovich*, 582 F.3d at 1237. The overwhelming evidence also showed that Utra: (1) knew of the marijuana found in his house on June 23, 2010; (2) possessed the marijuana; and (3) intended to distribute the marijuana. *See id.* When Utra was arrested, there were 2,022 grams of marijuana found approximately two feet from him in an open duffel bag. Gulakowski testified that this marijuana would have made at least 2,022 marijuana joints, which shows that the marijuana was intended for distribution and not Utra's personal use. Therefore, even if the jury erroneously considered the items found during the execution of the search warrant, "the other evidence of guilt was so overwhelming that [Utra] suffered no prejudice from" it. *Khoury*, 901 F.2d at 960.

### III.

We review the district court's determination as to the amount of drugs for which a defendant is responsible for clear error. *United States v. Hansley*, 54 F.3d

8

709, 714 (11th Cir. 1995). Clear error review is deferential, "and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010) (quotations omitted). If the defendant challenges a factual basis for his sentence, the government must establish "the disputed fact by a preponderance of the evidence." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (quotation omitted). The government must bear its burden using "reliable and specific evidence." *Id.* (quotation omitted). The base offense level for a crime involving between 40 and 60 kilograms of marijuana is 20, and the base offense level for a crime involving between 20 and 40 kilograms of marijuana is 18. U.S.S.G. § 2D1.1(a)(5), (c)(10), (c)(11). A defendant in a conspiracy is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *Id.* § 1B1.3(a)(1)(B).

The court did not err in finding, by a preponderance of the evidence, that Utra and Arcallo were co-conspirators and that the marijuana found in Arcallo's home was part of the conspiracy. Arcallo was a known marijuana grower. Utra spoke to Arcallo on the telephone before meeting Castillo at the Pollo Tropical. Utra drove Arcallo's car to the meeting with Castillo and drove the car back to

Arcallo's home immediately after the meeting. Also, the marijuana found in Arcallo's home was packaged in the same manner as the other marijuana found in this conspiracy.

For the foregoing reasons, we affirm Utra's convictions and sentences.

**AFFIRMED.**