[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11209
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-00034-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TYRUN LAYVON COOK, a.k.a. TY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 20, 2014)

Before HULL, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

After a guilty plea, Tyrun Cook appeals his 168-month concurrent sentences on four counts related to the distribution of crack cocaine.  Cook challenges the district court's application of a two-level increase in his offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a dangerous weapon in connection with his drug offenses.  After review of the record and the briefs, we affirm in part and remand in part.

## I. BACKGROUND

### A.   Guilty Plea and Sentencing

On June 2, 2009, Cook was charged with one count of conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(iii), and three counts of distribution of more than 5 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii).  Cook entered a guilty plea to all four counts on August 13, 2009.

The Presentence Investigation Report ("PSI") calculated: (1) a base offense level of 36, pursuant to U.S.S.G. § 2D1.1(c)(2) (2008), estimating that Cook participated in the distribution of 1,625.9 grams of cocaine base and 16 pounds of marijuana; (2) a two-level increase, pursuant to U.S.S.G. § 2D1.1(b)(1), for possession of a firearm in connection with a drug offense; and (3) a two-level increase, pursuant to U.S.S.G. § 3B1.1(c), for a leadership role in the criminal activity.  The PSI did not apply a reduction for acceptance of responsibility,

2

pursuant to U.S.S.G. § 3E1.1, and thus calculated a total offense level of 40.  The PSI also calculated a criminal history category of III.  With a total offense level of 40 and a criminal history category of III, the PSI identified Cook's advisory Guidelines range as being 360 months to life in prison.

Cook objected to these portions of the PSI: (1) the calculation of the drug quantities; (2) the application of the two-level increase for possession of a firearm; (3) the two-level increase for a leadership role; and (4) the PSI's refusal to grant him a reduction for acceptance of responsibility.

On January 13, 2010, the district court held a sentencing hearing and sustained Cook's objections to (1) the calculation of the drug quantities; (2) the two-level increase for a leadership role; and (3) the PSI's refusal to grant Cook a reduction for acceptance of responsibility.  However, the district overruled Cook's objection to the two-level increase for possession of a firearm.

In regard to drug quantity, the district court found that Cook transacted 1,006 grams of cocaine, a majority of which was cocaine base, and two pounds of marijuana.  Those drug quantities produced a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3).  The district court declined to apply any increase for a leadership role, but did apply a three-level decrease for his acceptance of responsibility.

3

With a base offense level of 34, a two-level increase for possession of a firearm, and a three-level decrease for acceptance of responsibility, the district court calculated Cook's total offense level now at 33. That offense level, combined with Cook's criminal history category of III, yielded an advisory Guidelines range of 168 to 210 months in prison.

Because the only issue on appeal is the two-level increase for possession of a firearm, we review the testimony from the sentencing hearing in that regard. One witness, Travis Tise, is from the same hometown—Perry, Florida—as Cook. Tise testified that he sent Cook to Georgia at times to obtain cocaine and bought two crack cocaine "cookies" from Cook each day during a two-week period in January 2009. Tise testified that he saw Cook "a couple of times" cooking powder cocaine into crack cocaine at Cook's home, which was also Cook's mother's residence. Tise further testified that he saw Cook "with a firearm a couple of times, a black gun . . . [that] looked like something the police would have." Tise said that he had "seen him at the house with it"; "at the club with it"; and "up at the store porch," known as "Cashville." Tise also saw Cook get powder cocaine from Robert Henry Glanton, Robert Sherrelle Glanton, Alton Miller, and an individual Tise identified as Cook's uncle.

A second witness, Robert Henry Glanton, had known Cook "from a kid on up, just know him from drugs." Glanton testified that he and his brother provided

Cook with cocaine and knew Cook "since he was a very young man, even a boy" and started dealing drugs with him in 2007.  Glanton testified that he observed Cook and three other individuals selling firearms out of the bed of an old Chevrolet pickup truck.  Glanton testified that Cook called him to offer guns for him to purchase, but that Glanton declined the offer.  Glanton testified that he saw two individuals buy guns and that Cook actively participated in pricing the guns.  There was also testimony that money paid for the guns was given to Cook so that he would give drugs to the individuals selling the guns with him.

Glanton further testified that, prior to the incident where Cook was selling guns out of the pickup truck, Cook often purchased about an "eighth of a key" or "3 and a half" ounces.  When asked if it was "true that [Cook] began to buy larger amounts following this gun encounter," Glanton replied, "Yes, sir."  Glanton testified that, "following after" the gun incident, he sold 9 ounces of cocaine to Cook.

Another government witness, James King, was also a long-time friend of Cook's.  King testified that he distributed drugs with Cook.  King further testified that he observed Cook with a handgun in his back pocket "[s]ometime at the club."  King said that Cook told him at one point that Cook was going to purchase about 9 ounces of cocaine, although King did not see the transaction.

After receiving the testimony of the witnesses, the district court found that the nine ounces that Cook bought from Glanton was the same as the nine ounces Cook told King he was going to buy—and that the 9-ounce transaction occurred "right after the gun show." The district court also found that Cook should receive the two-level increase for possession of a gun in connection with the offenses.

In regard to the increase for possession of a firearm, the district court found that "there was testimony that Mr. Cook had a practice of carrying a gun around in his back pocket." The district court also found that (1) Cook "did it at the club" and that "he did it at the house," and (2) "[w]e do have drug transactions at the house." The district court acknowledged that "[w]e don't have precise testimony that anybody saw him with the gun at the time of the drug transaction." But the district court found that it was Cook's "regular practice both to sell drugs and to have the gun in the pocket." The district court found it "more likely than not that he had the gun in the pocket during the drug transaction."

After considering the 18 U.S.C. § 3553(a) factors, including Cook's advisory Guidelines range, the court sentenced Cook to 168 months' imprisonment—the low end of Cook's advisory Guidelines range—and 5 years of supervised release. The court entered its judgment on January 19, 2010.

**B.    Reduction under Amendment 750**

On January 11, 2012, the district court sua sponte issued an order notifying Cook and the government that it believed Cook was eligible for a reduced sentence pursuant to Amendment 750 to the Guidelines, and that it intended to reduce Cook's term of imprisonment from 168 months to 135 months.  The district court stated that, under Amendment 750, Cook's total offense level should be reduced from 33 to 31, which would drop the low end of Cook's advisory Guidelines range from 168 months to 135 months.  The court ordered the government to respond.

The government responded on February 13, 2012, stating that it agreed that Cook's total offense level is 31 under Amendment 750 but that it would not take a position regarding the intended reduction.  On February 20, 2012, the district court ordered that Cook's sentence be reduced to 135 months.

**C.    Cook's § 2255 Motion**

Prior to the district court's order reducing his sentence, Cook had filed a motion to vacate his sentence under 28 U.S.C. § 2255 based on ineffective assistance of trial counsel.  Cook alleged, inter alia, that his counsel failed to file a notice of appeal of his 168-month sentence despite Cook's instruction for counsel to do, and requested that the court vacate its judgment and re-impose the same sentence so that he would be able to file a direct appeal.  Cook's § 2255 motion

was pending before a magistrate judge when the district court <u>sua sponte</u> raised the issue of Amendment 750 and reduced Cook's sentence to 135 months.

The § 2255 action was reassigned to a new magistrate judge on April 2, 2012, and the magistrate judge held an evidentiary hearing on Cook's motion on January 16, 2014.  At the hearing, Cook testified that he requested that his attorney file a notice of appeal.  Cook's attorney testified that he did not recall Cook telling him that he wanted to appeal.

On February 3, 2014, the magistrate judge issued a Report and Recommendation, finding that Cook's testimony was more credible.  The magistrate judge recommended that the district court vacate the prior judgment and re-impose the same sentence, allowing Cook to timely appeal.  On March 12, 2014, the district court adopted the magistrate judge's Report and Recommendation, vacated the prior judgment, and entered a renewed judgment sentencing Cook to a term of imprisonment of 168 months and 5 years of supervised release.  The district court did not reference its prior order reducing Cook's sentence, nor did it mention Amendment 750 to the Guidelines.

After the district court entered the renewed judgment, Cook timely appealed.

8

## II. DISCUSSION

On appeal, Cook contends that the government "failed to prove any firearm was present during any of the conduct charged or relevant conduct." [1]

Under U.S.S.G. § 2D1.1, the offense level for a drug offense is increased by two levels if "a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  This firearm enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1 cmt. n.3.

The government has the burden of showing "by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction."  United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).  Once the government "has shown by a preponderance of the evidence that the firearm was present at the site of the charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable."  United States v. Hall, 46 F.3d 62, 63 (11th Cir. 1995).

Where a defendant has been charged with conspiracy, the § 2D1.1(b)(1) offense-level increase may be applied "if the firearm[ ] [is] found in a place where

---

[1]We review for clear error the district court's fact findings under U.S.S.G. § 2D1.1 and review de novo the district court's application of those facts under the Guidelines.  United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

9

acts in furtherance of the conspiracy took place." United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006). For example, the two-level increase is properly applied where the defendant possessed the firearm at his residence and also engaged in conspiratorial conversations at the residence. See United States v. Hansley, 54 F.3d 709, 716 (11th Cir. 1995).

Here, the evidence was sufficient to support the district court's finding that Cook possessed the firearm in connection with his drug conduct. For example, the evidence indicates that Cook possessed the firearm at the same location where he committed acts in furtherance of the drug conspiracy. Witness Tise testified that he had seen Cook with a black handgun multiple times, including at the home where Tise saw Cook convert powder cocaine into crack cocaine. Cook's possession of a gun where he cooked powder cocaine into crack cocaine is sufficient to establish the required connection between the firearm and the drug conspiracy.

Indeed, the connection between the firearm and the drug conspiracy is stronger here than it was in Hansley. In Hansley, we affirmed an application of the two-level increase where the government produced evidence that agents found a firearm and drug paraphernalia at a residence that was the site of conspiratorial conversations. Cf. 54 F.3d at 716. Here, by contrast, the government produced evidence that Cooked personally possessed the gun in a residence that was not

10

merely the site of drug paraphernalia and relevant conversations, but rather was where the defendant actively cooked powder cocaine into crack cocaine—a key act in furtherance of the conspiracy to distribute cocaine base.

Furthermore, Cook's reliance on Stallings is misplaced.  In Stallings, this Court held that the government failed to meet its burden "because the government provided no evidence connecting the pistols found in [the defendant's] home to his alleged drug activity and because the government never addressed the possibility that the weapons belonged to any of the other adults residing in his home."  463 F.3d at 1221.  Here, the government produced evidence, in the form of direct testimony, that Cook engaged in drug activity at the home and that Cook himself possessed the gun in the home.  Additionally, when the district court noted that "there's testimony that [Cook] had the gun at the house" and stated that Cook "certainly engaged in drug business at the house," defense counsel assented.  That is precisely the kind of "nexus" between "between the firearm[ ] and the drug crime" that was lacking in Stallings.  Id.

In light of the testimony offered at the sentencing hearing, and because Cook does not argue that he met his burden of establishing that any connection between the gun and the conspiracy was clearly improbable, we cannot say that the district court erred when it applied the two-level increase for possession of a firearm in connection with the offenses.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's Guidelines calculations.  However, we note that the district court's renewed judgment, entered on March 12, 2014, reinstated Cook's term of imprisonment as 168 months, even though the court previously had reduced Cook's sentence to 135 months' imprisonment.  The government's brief concedes that this judgment "erroneously listed Defendant's sentence as 168 [months] on each count, rather than 135 months."  We remand to the district court for the limited purpose of correcting the renewed judgment to reflect the reduced sentence, pursuant to Amendment 750 of the Guidelines.  See United States v. Reeves, 742 F.3d 487, 507 n.12 (11th Cir. 2014) ("We may sua sponte raise the issue of clerical errors in a judgment and remand with instructions that the district court correct them.").

**AFFIRMED and REMANDED.**