[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11997

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 10, 2011
JOHN LEY
CLERK

D.C. Docket No. 06-00029-CR-OC-10-GRJ

UNITED STATES OF AMERICA,

                                                    Plaintiff-Appellee-
                                                    Cross-Appellant,

                              versus

ALVIN DORSEY,
a.k.a. Pee Wee,
ERIC WILLIAMS,
a.k.a. Lex,
MIGUEL ORTIZ,
a.k.a. Mexican Mike,
a.k.a. Michael Gonzalez,
MAURICE BENN,
a.k.a. Doodlebug,
DAVID JOHNSON,
a.k.a. Black Dave,
GREGORY GAINES,
CARL ST. PREUX,
a.k.a. Short,

                                                    Defendants-Appellants,


CHRISTOPHER WILDER,

                                                    Defendant-Appellant-
                                                    Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(February 10, 2011)

Before MARCUS and HILL, Circuit Judges, and VOORHEES,[*] District Judge.

HILL, Circuit Judge:

This is a consolidated appeal from final judgments of the United States

District Court for the Middle District of Florida. Defendants Maurice Benn, Alvin

Dorsey, Gregory Gaines, David Johnson, Miguel Ortiz, Christopher Wilder, Eric

Williams, and Carl St. Preux appeal from their convictions and sentences. The

government appeals the sentence given Christopher Wilder. For the following

reasons, we shall affirm.

I.

The evidence at trial showed that these eight defendants and others[1]

participated in the selling of cocaine and crack over a five-year period in central

Florida. On any given day, defendants sold one-fourth to one-half kilogram of

cocaine; sometimes they sold $120,000 worth of cocaine in one week. In addition,

_____

[*]Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

[1]Four additional defendants were indicted, but are not present in this consolidated appeal.

defendants cooked powder and sold the resulting crack throughout the area. In late 2003, a law enforcement task force executed search warrants at the houses of several of the defendants and subsequently all eight were arrested.

A grand jury indicted the defendants for conspiracy to distribute five or more kilograms of powder cocaine and fifty or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. The defendants pled not guilty and proceeded to trial. The trial lasted fourteen days and involved thirty government witnesses. The jury found that Benn, Dorsey, Gaines, Johnson, and Williams had conspired to distribute five kilograms or more of powder and fifty grams or more of crack; Ortiz and St. Preux had conspired to distribute five kilograms or more of powder; and Wilder had conspired to distribute less than 500 grams of powder and five or more grams of crack. The district court denied the defendants' motions for judgments of acquittal or new trial made during and renewed after trial.

The court sentenced Wilder to 144 months; Ortiz to 186 months; Williams to 235 months; Benn, Dorsey, and Gaines to 300 months; and Johnson and St. Preux to life imprisonment. Benn, Dorsey, Gaines, Johnson, Ortiz, Wilder, and Williams appeal their judgments of conviction and sentences and the government cross-appeals Wilder's sentence.

3

II.

Defendants raise nine issues regarding their convictions, and allege five errors in connection with their sentencings. The United States raises one issue in connection with Wilder's sentence. We address these issues in turn.

1.   **Alleged Inadequacy of Proof of Single Conspiracy**

Benn, Dorsey, Gaines, Johnson, Wilder, Williams and St. Preux moved for a judgment of acquittal, asserting that the government failed to prove the alleged conspiracy or their knowing participation in it. Some of the defendants assert that the government's evidence established two conspiracies – one involving the government's witnesses who had been found guilty in a previous case and another separate conspiracy involving the defendants here. Other defendants argue that, at most, the evidence showed a series of sub-agreements or mere buyer-seller agreements that were not tied together in one overarching conspiracy as charged in the indictment. All defendants allege that there was a material variance between the evidence at trial and the conspiracy charged in the indictment. This court reviews *de novo* a district court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict. *United States v. Byrd*, 403 F.3d 1278, 1288 (11th Cir. 2005).

A material variance between an indictment and the government's proof at

4

trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy. *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). Because the jury determines the question of fact as to whether the evidence establishes a single conspiracy, the arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt. *United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993). Accordingly, the district court should not grant a motion for acquittal based upon an alleged variance between the evidence and the conspiracy charged in the indictment if there was substantial evidence in the record from which the jury could have found that a single conspiracy existed. *United States v. Calderon*, 127 F.3d 1314, 1327 (11th Cir. 1997).

In determining whether the jury in this case could have found a single conspiracy, we review the record to determine whether there was substantial evidence that (1) there was a common goal among the conspirators; (2) there was an underlying and common scheme amongst the conspirators; and that (3) there was substantial overlap of participants in that scheme. *Id.* We have made clear that "separate transactions are not necessarily separate conspiracies, so long as the

conspirators act in concert to further a common goal." *United States v. Chandler*, 388 F.3d 796, 811 (11ᵗʰ Cir. 2004) (citation omitted). If the evidence shows that a defendant's actions "facilitated the venture as a whole," a single conspiracy is established. *Id.* It is irrelevant that the particular co-conspirators did not participate in every stage or facet of the conspiracy. *United States v. Alred*, 144 F.3d 1405, 1415 (11ᵗʰ Cir. 1998).

We have held that "[i]t is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements . . . . This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." *Calderon*, 127 F.3d at 1329 (internal quotation marks and quoted authority omitted). We look to see if an "actor demonstrated a substantial level of commitment to the conspiracy, [for example] by engaging in a consistent series of smaller transactions that furthered its ultimate object of supplying the consumer demand of the market." *United States v. Westry*, 524 F.3d 1198, 1213 (11ᵗʰ Cir. 2008) (quoting *United States v. Banks*, 10 F.3d 1044, 1054 (4ᵗʰ Cir. 1993) (internal quotation marks and citations omitted)).

There is no doubt that the evidence in this case satisfied these standards. The government's witnesses testified to the wide-ranging and long-lasting

conspiracy in which these defendants participated. The jury found and the district court affirmed that the evidence showed that the defendants shared a common goal of obtaining and selling cocaine, powder and crack in central Florida, and that each of these defendants participated as a supplier, distributor, and/or facilitator at different times. The participants knew one another, lived together or near one another, and there was substantial overlap among the participants in those charged in the earlier indictment and those charged here. Moreover, the court instructed the jury on single versus multiple conspiracies, "and the convictions of the defendants [therefore] 'are implicit findings that the evidence proved the existence of the single conspiracy alleged.'" *United States v. Jones*, 913 F.2d 1552, 1561 (11th Cir. 1990) (citation omitted). We have no difficulty concluding that the government proved the conspiracy it charged in the indictment.

2.      **Alleged Error in Comment on Benn's Right to Remain Silent**

Benn alleges that the district court abused its discretion in denying his motion for mistrial based upon a government witness' answer on cross-examination that Benn asserts was an improper comment on his right to remain silent. We disagree.

During the cross-examination of a government agent, Benn's counsel elicited the following testimony:

7

Q. As a result of your investigation, do you know whether or not Mr. Benn encouraged other individuals in that area to do likewise and get clear?

A. He refused to speak to me, so I have no idea.

* * * *

Q. Are you aware of whether or not throughout your investigation that they used to gamble on these Nascar races?

A. No indication. Again, Mr. Benn didn't speak to me, so I have – I don't know what the purpose was.

To determine whether these two responses were impermissible comments on Benn's right to remain silent, we must consider whether the statement, in context, was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of an accused to testify. *United States v. Chastain*, 198 F.3d 1338, 1351-52 (11th Cir. 1999). In this case, the agent's statements were direct responses to Benn's own counsel's persistent open-ended questions and, as the district court noted, "were at least partially invited by the nature of the questions." As Benn notes, himself in his brief, this court generally upholds a district court's refusal to grant a mistrial where the witness' allegedly impermissible comment to the jury was "spontaneous and singular." *United States v. Funt*, 896 F.2d 1288, 1295 n.5 (11th Cir. 1990). Finally, this comment about Benn was referring to a time prior to his being in custody. Accordingly, we find no abuse of discretion in the district court's denial of a

mistrial for this reason.

3.      **Alleged Error in Preclusion of Cross-examination of Government Witnesses on Factual Bases in their Plea Agreements**

Several defendants argue that the court abused its discretion and violated their Confrontation Clause rights by precluding their cross-examination of some government witnesses about the factual bases of those witnesses' plea agreements. Defendants argue that the district court improperly limited cross-examination regarding certain omissions in those factual bases.

While defendants have the right to cross-examine witnesses effectively, *Pointer v. Texas*, 380 U.S. 400, 404 (1965), they do not have the right to cross-examine witnesses "in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). Trial judges retain "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . confusion of the issues, . . . or interrogation that is . . . only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

In this case, the district court limited the cross examination of the government witnesses as to whether the silence in the factual bases underlying their pleas about the participation of a particular defendant was inconsistent with

the witness' inculpatory testimony about that defendant on direct examination. The court's ruling was predicated on Rule 403, Fed. R. Evid., which permits the exclusion of otherwise relevant evidence where its probative value is substantially outweighed by the possibility of misleading the jury. The district court noted that the focus of the factual basis for a plea is on the guilt of the pleading defendant, not on establishing the guilt of accomplices. The court held that to permit cross examination about the silence of the document concerning a particular accomplice would be potentially confusing to the jury and unfair to the witness.

Defendants did not demonstrate that this ruling was an abuse of the district court's discretion or that it impeded their ability to cross-examine the government witnesses. The record reveals that the district court permitted each of the defendants to individually and extensively cross-examine all of the government witnesses concerning their incentives to testify, criminal histories, biases, and opportunities to discuss the case with one another. Further, the court permitted defendants to explore whether there were inconsistencies between the witnesses' trial testimony and government debriefings.

We conclude that there was ample evidence upon which the defendants could and did argue that the witnesses' testimony was unreliable and upon which the jury could evaluate the witnesses' credibility. Accordingly, we find no abuse

of discretion or constitutional error here.

4.     **Alleged Prosecutorial Misconduct in Eliciting Testimony About Threats**

Dorsey, Gaines, and Wilder allege that the prosecutor deliberately and impermissibly elicited testimony from a testifying co-conspirator, after the court had sustained an objection to such testimony, about threats made against his family by one of the defendants. The defendants argue that the district court abused its discretion by not granting a mistrial.

At sidebar, the government announced its intention to elicit on redirect examination of its witness that both the witness and his family had been threatened by un-named persons to intimidate him from testifying. The defense objected as outside the scope of direct examination and the district court sustained the objection. The court said that the ruling did not "foreclose [the government] pursuit of threats if [it had] evidence of it" and that the court did not think the government could "get into that subject presently with [the witness] but "it doesn't foreclose [the] pursuit of the subject in the remainder of [the government's] case."

During re-direct, the government asked the witness if he or his family had been threatened. As the court was sustaining a renewed objection, the witness answered "yes." The court instructed the jury to disregard the answer. The government expressed confusion over the court's ruling. The next day, one of the

defendants moved for a mistrial based upon alleged prosecutorial misconduct. The court denied the motion, ruling that the defendants had not been prejudiced by the question because the witness had not identified which defendant or defendants had made the threat.

We do not reverse a conviction on the basis of prosecutorial misconduct unless the prosecutor's remarks in the context of the entire trial in light of any curative instruction were both improper and prejudicial to the defendant's substantive rights. *United States v. O'Keefe*, 461 F.3d 1338, 1350 (11th Cir. 2006). In this case, the government's question was both improper and inept. Coming directly on the heels of the court's ruling that it was not proper on *redirect* examination, it is difficult to understand why it was asked.

On the other hand, we do not believe that the prosecutor deliberately defied the court. The government argues that the prosecutor understood the court to mean that the question was, as the court said, "presently" improper, but that it might become appropriate during the course of the redirect. This is not an unreasonable interpretation and there is no evidence of impermissible intent.

In any event, we do not find that the question prejudiced the defendants' substantive rights. *See O'Keefe*, 461 F.3d at 1350. The question and answer arose in the context of Anthony Fielding's involvement in the conspiracy and the jury

ultimately acquitted Fielding. This result militates against a conclusion that the jury was unduly impressed by the question and the answer. Additionally, the answer did not associate any particular defendant with the threat. Finally, the court instructed the jury to disregard the question, and the jury is presumed to have done so. *See Calderon*, 127 F.3d at 1334.

5.  **Alleged Error in Denial of Mistrial Based Upon a Closing Argument**

The defendants argue that the court abused its discretion in denying their motions for mistrial based upon one defendant's closing argument that the other defendants were involved in the charged conspiracy, but he was not. In the closing argument at issue, counsel asserted that the government had proved the charged conspiracy with respect to other defendants but had proved only a separate, uncharged conspiracy with respect to his client. The other defendants moved for a mistrial, asserting that the closing argument presented a mutually antagonistic defense. The district court denied the motion.

To grant a new trial based upon a co-defendant's closing argument, we must find the argument to be both improper and prejudicial to a substantial right of the defendant. *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005). When a curative instruction is given, this court will reverse "only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *Id.* (quoting

13

*United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994)).

The district court found that the closing argument did not present an antagonistic defense. The court noted that counsel had admitted his client was an addict who also sold crack cocaine in order to support his habit. The court also agreed that counsel had at least implicitly conceded that the government had proved the existence of the conspiracy charged in the indictment and that the other defendants (with two possible exceptions) were members of that conspiracy. The court concluded, however, that "these concessions were a prelude to his principal argument that the evidence also demonstrated the existence of another, separate conspiracy, and that [his client] was a member of *that* conspiracy, not the one charged in the indictment."

Even assuming that this defense was inconsistent with the other defenses, the district court correctly concluded that it was not antagonistic to them because it was not "mutually exclusive" of them. *See Garcia*, 405 F.3d at 1272. Under the law of this circuit, the "essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Farrell*, 877 F.2d 870, 876-77 (11th Cir. 1989). In this case, counsel did not argue that his client was *not* guilty because the other defendants *were* guilty. He merely argued that they were *all*

guilty, but of different conspiracies. Therefore, the defenses were not mutually exclusive, and the district court correctly so held.

We find no merit to any other allegations of trial error.[2]

6.      **Alleged Sentencing Errors**

Defendants assert that the district court made a variety of errors in their sentencing. Benn, Dorsey, Ortiz, and Williams argue that the court erred in determining the quantity of cocaine attributable to them, contending that the determinations were based on unreliable trial testimony and estimations. We have reviewed the record, and find this assertion to be unsupported. There was ample evidence in this record showing the average frequency and amount of a defendant's drug sales over a given period of time, all reliable indicators of the quantity of cocaine attributable to each. *See United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). The district court in this case based its sentences on fair, accurate, and conservative estimates of the quantity of drugs attributable to each defendant. *See United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998).

---

[2]One or more defendants allege that the trial court abused its discretion by failing to instruct the jury on a buyer/seller defense; admitting evidence that cocaine was found in Ortiz's room; admitting evidence that marijuana was found in Wilder's room; and denying St. Preux's motion for severance and for mistrial based upon the failure to disclose a previous statement by a co-defendant and government witness. St. Preux also alleges that the trial court erred in not granting him a new trial due to ineffective assistance of counsel.

Nor did the district court err in finding that Williams had possessed a gun in connection with the cocaine conspiracy. After the government demonstrated the proximity of the firearm to the site of the charged offense, the burden shifted to Williams to show that the connection was "clearly improbable." *See United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). This he did not do. The district court correctly adjusted Williams offense level accordingly.

Benn argued that the district court erred in finding that he committed the conspiracy less than two years from his April 25, 1996, release from prior custody and consequently in assessing him two additional criminal history points pursuant to USSG § 4A1.1(e). He contends that the record does not indicate in which month in 1998 the conspiracy began. As Benn's criminal history score with the adjustment was six, and the category into which he fell was four to six points, his sentence would not change even if his argument were meritorious. Accordingly, we shall not address this issue. *See United States v. Raad*, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005).

Neither did the court clearly err in considering Gaines', Johnson's, and Wilder's prior state drug convictions in determining their criminal history scores. Defendants claim that the district court incorrectly considered conduct that was part of the charged conspiracy in calculating these scores. The record clearly

16

demonstrates that Gaines' prior conduct occurred more than one year prior to the charged conspiracy, that Johnson was subject to a statutory life sentence irrespective of the guidelines range, and that Wilder's enhancement was for a separate criminal act. *See Raad*, 406 F.3d at 1323 n.1; *United States v. Hansley*, 54 F.2d 709, 717 (11th Cir. 1995). Thus, there was no error here.

Benn and Gaines complain that the district court failed to comply with its obligation under 18 U.S.C. § 3553(c)(1) to state the reasons for their 300-month sentences. The district court imposed the sentences, stating that it had the advantage of having presided over the lengthy trial, that the 300-month sentences were reasonable in light of the Section 3553(a) factors, including that the court had already imposed the same sentence upon Dorsey, who had a similar background and culpability. The context and the record make clear that the court had considered the parties' arguments and had a reasoned basis for exercising his legal decision-making authority. *See Rita v. United States*, 127 S. Ct. 2456, 2468 (2007); *see also United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006) (approving similar sentencing reasons); *United States v. Parrado*, 911 F.2d 1567, 1572-73 (11th Cir. 1990) (same).

We find no merit to any other allegations of sentencing errors.[3]

## 7. **Government's Allegation of Sentencing Error**

The government alleges that the district court erred in determining Wilder's sentencing guidelines range by using the jury's special verdict form to cap the drug quantities and by refusing to consider relevant conduct that the government had established by a preponderance of the evidence. The law of this circuit is that a district court *may* take into account the relevant conduct of which a defendant was acquitted. *United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005); *United States v. Baraket*, 130 F.3d 1448, 1452 (11th Cir. 1997) (district court *free* to consider such evidence). The district court was within its discretion in declining to do so. *Id.*

### III.

For the foregoing reasons, the convictions and sentences of all defendants are AFFIRMED.

---

[3]These allegations of error include that the district court: considered St. Preux's prior drug conviction and treated the Sentencing Guidelines as mandatory. Finally, several defendants urge us to remand their cases for the district court to reduce their sentences pursuant to the crack sentencing guideline that became effective after their sentencings. *See* 18 U.S.C. § 3582(c)(2). As this relief is discretionary, *see United States v. Vautier*, 144 f.3d 756, 762 (11th Cir. 1998), the appropriate route to it is for defendants to move the district court to reduce their sentences after the disposition of this appeal.