[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16572

_____

D.C. Docket No. 9:12-cr-80079-KAM-5

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

FRANCISCO E. GARCIA, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 4, 2014)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and DUBOSE,[*] District
Judge.

PER CURIAM:

_____

[*] The Honorable Kristi K. DuBose, United States District Judge for the Southern District of
Alabama, sitting by designation.

Francisco E. Garcia, Jr. appeals his 120-month total sentence, imposed after he pleaded guilty to one count of conspiring to possess with intent to distribute over five kilograms of cocaine, and two counts of possessing with intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a), respectively.  Garcia takes issue with the district court's application of the firearm enhancement under U.S.S.G. § 2D1.1(b)(1), which he contends was not supported by the facts and also denied him eligibility for safety valve relief.

Upon review, we find that the district court did not err in applying the firearm enhancement.  However, we reverse and remand for the district court to determine, in light of the lesser burden of proof, whether Garcia is nonetheless eligible for safety valve relief.

I.

According to the factual proffer executed in connection with his guilty plea,[1] Garcia stipulated that he was a midlevel distributor in the drug-trafficking conspiracy and received a total of five to fifteen kilograms of cocaine from codefendant Francisco Lorenzo on three separate occasions between November 2011 and April 2012.  Specifically, while under visual surveillance, Garcia received at his residence three kilograms of cocaine from Lorenzo on March 22,

---

[1] At the plea hearing, Garcia agreed that all of the facts in the proffer were true and correct, and also agreed that he waived any claim of ownership to property seized pursuant to the forfeiture provision.

2

2012, and an additional kilogram from him on March 31.  Garcia also admitted to having received, at some point before March 22, 2012, two additional kilograms of cocaine from Lorenzo.  According to the Presentence Investigation Report ("PSI"), wiretap surveillance of Garcia indicated that drug transaction proceeds were also kept, at least briefly, at Garcia's residence.

Following his arrest on May 4, 2012, agents searched Garcia's home and seized three firearms: (1) a 40-caliber Glock 22 semi-automatic pistol, with two magazines and 6 rounds of ammunition, in an office; (2) a 5.7-mm by 28-mm semi-automatic pistol with two magazines and 14 rounds of ammunition, in a night stand in the master bedroom; and (3) a loaded 9-mm semi-automatic pistol with 11 rounds of ammunition, behind a safe in the master bathroom.

The PSI assigned Garcia a base offense level of 32, pursuant to U.S.S.G. § 2D1.1(a)(5).  Garcia received a two-level enhancement for possessing a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1).  Following a reduction for timely acceptance of responsibility, the PSI assigned him a total offense level of 31. With a criminal history category of I, the resulting guideline range was 108 to 135 months. However, because of a 10-year mandatory sentence as to Count One, Garcia's range became 120–135 months. The PSI also reported that Garcia was not entitled to safety valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, but did not indicate why Garcia did not satisfy the criteria.

Garcia objected to the firearm enhancement and to the failure to apply the safety valve reduction.  Specifically, he contended that because the firearms were located in the house and there was no evidence that drug transactions occurred in the house, the government did not meet its burden to show that a weapon was present during the offense.  Moreover, Garcia argued that he kept the guns at his house for security, and highlighted that he kept large amounts of cash from his livestock business there.  Garcia further stated that he stored the drugs in the garage, away from the guns.

At the sentencing hearing, the parties stipulated to the following facts regarding the firearm enhancement: (1) Garcia legally owned all of the guns found in his home, and purchased them before the conspiracy began; (2) he lived in a rural community, and his house was on a five acre farm where he operated a livestock business; (3) before the conspiracy began, he was robbed at his farm on one occasion; (4) all three cocaine deliveries were made to his farm; and (5) on May 4, 2012, agents recovered $23,592 in cash in a safe in the master bedroom of his house, which Garcia voluntarily agreed to forfeit to the government.

The district court overruled Garcia's objection and applied the §2D1.1(b)(1) firearm enhancement.  The court found that the situs of the drug activity was the farm and that the government had met its burden to show that the weapons were present at the site of the charged conducted.  The court also determined that Garcia

4

failed to show that a connection between the firearm and the drugs was clearly improbable.

## II.

Garcia argues, reiterating the points made at his sentencing, that the district court erred in applying the firearm enhancement under § 2D1.1(b)(1), which he notes deprived him of safety-valve relief.

This Court reviews the district court's findings of fact under § 2D1.1(b)(1) for clear error, and it reviews *de novo* the application of the Sentencing Guidelines to those facts. *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (per curiam). So long as the district court's findings are plausible, this Court will not reverse under clear error review. *United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003). Further, this Court may affirm on any basis supported by the record. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (per curiam). If a defendant fails to object to factual allegations contained in the PSI, he admits those facts for consideration during sentencing. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

Under § 2D1.1(b)(1), a defendant's offense level increases by two levels if a dangerous weapon was possessed. U.S.S.G. § 2D1.1(b)(1). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.11(A). To

5

justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that the firearm was present at the site of the charged conduct, or (2) that the defendant possessed a firearm during conduct associated with or relevant to the offense of conviction. *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). If the government meets its burden, then the burden shifts to the defendant to show that a connection between the weapon and the offense was clearly improbable. *Id.* Failure to produce such evidence permits a district court to apply the enhancement. *United States v. Hall*, 46 F.3d 62, 63–64 (11th Cir. 1995) (per curiam).

Evidence that a defendant used or could have used a firearm to protect his criminal activity is sufficient to show a connection between the firearm and the offense, and will thus satisfy the government's burden under § 2D1.1(b)(1). *See United States v. Carillo-Ayala*, 713 F.3d 82, 91–92, 94–95 (11th Cir. 2013) ("While other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's *potential* use is critical."); *United States v. Hansley*, 54 F.3d 709, 715–16 (11th Cir. 1995) (holding that government met its burden with evidence that agents found a firearm and other drug-related items in the defendant's house where defendant engaged in conspiratorial conversations).

6

With respect to whether a defendant has established that a connection between a firearm and the relevant offense was clearly improbable, this Court has held that a firearm found in the office area of a warehouse was present at the site of the conduct, when cocaine was found "nearby in and around the warehouse" and drug transactions took place on the warehouse premises. *United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998). In *Trujillo*, the defendant argued that a connection between his gun and the cocaine was clearly improbable because he left the gun in the office when he engaged in drug deals, and because he carried his gun legally as a security guard. *Id.* We rejected that explanation, affirming the district court's finding that the explanation "just indicate[d] that the gun was there for personal security in the event something went wrong in connection with the drug trafficking transaction." *Id.*

Moreover, in *Carillo-Ayala*, this Court held that the defendant's contention that there was "no evidence that [his] firearms were loaded and ready to be used or that [he] felt he might need a firearm to protect himself" when selling drugs, was inadequate to show that a connection between the drugs and guns, which were found in the same area, was clearly improbable, explaining that "lack of information does not assist a defendant under a guideline that gives him the burden of proof[;] [t]he proximity of the guns to the drugs alone had the potential to

7

facilitate the offense." *Carillo-Ayala*, 713 F.3d at 98. *See also Hall*, 46 F.3d at 63–64.

Here, the district court did not err in imposing a firearm enhancement under § 2D1.1(b)(1). First, Garcia kept guns at his house, and he received and stored drugs somewhere on the property—in the garage, according to his objections to the PSI—on which the house was located. He also stored drug proceeds on the property. Specifically, the evidence showed that on March 23, 2012, Lorenzo collected, at Garcia's farm, the proceeds from the sale of some of the cocaine he delivered to Garcia the day before, and on March 31, a third codefendant went to Garcia's farm and collected the proceeds from the sale of the drugs delivered earlier that day.

Thus, the record shows that Garcia kept both drugs and drug money on the same premises as his guns. This evidence alone was sufficient for the government to meet its burden under § 2D1.1(b)(1) by showing the guns were located at the site of the offense conduct. Although Garcia argues that the house and the farm are distinct locations, this argument is unavailing because he could have used the firearms in his house to protect the drugs or the drug money on his property, regardless of whether they were also located inside the house. *Carillo-Ayala*, 713 F.3d at 94–95.

Additionally, the district court did not err in finding that Garcia failed to

8

show that a connection between the guns and the cocaine was clearly improbable. Garcia asserts that he kept the guns for personal security and highlights that the government provided no evidence that the drugs were ever located inside the house. Accepting his assertions as true, his claim still fails. First, even if he owned the guns to lawfully protect his property and family, he failed to show why he would not also keep them to protect the drugs or drug money on his property. *See Trujillo*, 146 F.3d at 847. Moreover, a lack of information concerning the specific storage location of the drugs cannot discharge Garcia's burden of proof. *Carillo-Ayala*, 713 F.3d at 98. Accordingly, the Court finds no error in the application of the firearm enhancement.

## III.

However, this finding does not address whether safety-valve relief was properly denied based on the firearm enhancement. Pursuant to 18 U.S.C. § 3553(f), Congress provided that when a defendant demonstrates that he meets five criteria, the "safety valve" requires a district court to impose a sentence without regard to the mandatory minimum specified by the statute. Also, § 2D1.1(b)(16) allows for a two-level decrease in the event that the defendant meets the safety valve criteria. The criterion at issue here requires a defendant to show that he "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the

9

offense."  18 U.S.C. § 3553(f)(2).

One month after the district court's pronouncement of Garcia's sentence, this Court published a relevant decision, *United States v. Carillo-Ayala*, 713 F.3d 82 (11th Cir. 2013).  In *Carillo-Ayala*, the Court addressed the question of whether application of the § 2D1.1(b)(1) enhancement necessarily precludes application of the safety valve.  713 F.3d at 89.  We clarified that conduct that meets the § 2D1.1(b)(1) possession standard will not always show a "connection" between the firearm and the additional felony offense.  *Id.* at 90–91.  Cases decided under § 2D1.1(b)(1) recognize that proximity between guns and drugs, without more, is sufficient to meet the government's initial burden.  *See, e.g.*, *Hansley*, 54 F.3d at 715–16 (affirming application of the enhancement "agents found a firearm and other drug-related items" in residence where defendant "engaged in conspiratorial conversations).

To overcome that initial showing, a defendant must show that it was clearly improbable the gun was used in connection with the offense.  By contrast, the safety valve exception requires a defendant show that he did not use violence or "possess a firearm . . . in connection with the offense" by a preponderance of the evidence.  18 U.S.C. § 3553(f)(2).  Thus, we held that "conduct that meets the § 2D1.1(b)(1) possession standard will not, in all cases, show a 'connection' between the firearm and the additional felony offense."  *Carillo-Ayala*, 713 F.3d at

10

90. In order words, to negate the government's initial showing of possession to avoid the enhancement, a defendant must show that it is clearly improbable the gun was connected to the offense, but to qualify for the safety valve, he need only tip the scale toward improbability–a lighter burden. Therefore, the imposition of the § 2D1.1(b)(1) enhancement will not preclude a defendant from negating the "connection" between his firearm and offense for purposes of seeking safety valve relief. To be sure, we noted that a defendant who qualifies for the § 2D1.1(b)(1) enhancement "will have a difficult task in showing that, even so, there is no connection with the drug offense so the safety valve applies." *Id.* at 93. Nevertheless, we clarified that the analysis is distinct and cannot collapse the two categories.

Therefore, the district court erred because it did not perform the necessary analysis to find that safety-valve protection was not available to Garcia. With the acquiescence of Garcia and the government, the court treated Garcia's objection to the § 2D1.1(b)(1) enhancement and subsequent denial of safety-valve protection as one analysis.[2] Accordingly, the case is reversed and remanded for resentencing.

**REVERSED AND REMANDED.**

---

[2] The government did not object to Garcia's representation that he qualified for the safety valve relief but for the gun enhancement.

11