[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10353
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cr-80079-KAM-5


UNITED STATES OF AMERICA,

                                                            Plaintiff-Appellee,

versus

FRANCISCO E. GARCIA, JR.,

                                                            Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 31, 2015)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Francisco E. Garcia, Jr., appeals from the district court's determination, following remand from this Court, that he was ineligible for safety-valve relief because he possessed three guns "in connection with" the drug offenses to which he pled guilty. *See* 18 U.S.C. § 3553(f). Government agents found the three guns in his home following his arrest for the charges in this case. Because Garcia conducted drug transactions on the property on which his home was located, the district court, at Garcia's original sentencing, applied a sentencing enhancement for possessing a firearm under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1) and, for the same reasons, denied safety-valve relief. The district court sentenced Garcia to the statutory mandatory minimum term of 120 months of imprisonment, the lowest sentence Garcia could receive unless the safety valve applied.

In Garcia's first appeal, we upheld application of the § 2D1.1(b)(1) enhancement but we reversed and remanded for resentencing with respect to whether the safety valve was available to Garcia. *United States v. Garcia*, 590 F. App'x 915 (11th Cir. 2014). We explained that, pursuant to our decision in *United States v. Carillo-Ayala*, 713 F.3d 82, 89-91 (11th Cir. 2013), the application of § 2D1.1(b)(1) does not necessarily preclude a defendant from obtaining relief via the safety valve, because conduct that meets § 2D1.1(b)(1) will not always show a "connection" between the gun and the offense. *Id.* at 919-20. Because the

district court conflated the analyses for § 2D1.1(b)(1) and the safety valve, we remanded the matter to the district court to determine whether the safety valve was available to Garcia despite his possession of the guns. On remand, the district court held a hearing on the matter and heard testimony from Garcia and a government agent. The district court determined that Garcia was ineligible for safety-value relief because his possession of the guns was in connection with the drug offenses. The court resentenced him to the same term of 120 months of imprisonment. Garcia now brings this appeal from the district court's determination on remand.

In this appeal, Garcia again contends that the district court erroneously found him ineligible for safety-valve relief. He argues that there was no evidence of any meaningful nexus between the guns and the drug offenses, such as evidence that he possessed a gun during his drug transactions, that he mentioned guns to his co-conspirators, or that drugs or co-conspirators entered his house. He further asserts that the guns did not promote or facilitate the drug offenses and that the guns were lawfully purchased years before the drug conspiracy in order to protect his livestock business. After careful review, we affirm the district court's denial of safety-valve relief.

## I.

We briefly review the relevant underlying facts. Garcia, who was a mid-level distributor in a cocaine-trafficking conspiracy, received several deliveries of cocaine at his farm from a co-conspirator between November 2011 and April 2012. Garcia sold the cocaine to a buyer for around $30,000 a kilogram, for which he earned a small cut of the proceeds. The co-conspirator or his girlfriend would return to Garcia's farm to collect the drug proceeds. Following his arrest, agents searched Garcia's home, which was located on the five-acre farm, and seized three firearms: "(1) a 40-caliber Glock 22 semi-automatic pistol, with two magazines and 6 rounds of ammunition, in an office; (2) a 5.7-mm by 28-mm semi-automatic pistol with two magazines and 14 rounds of ammunition, in a night stand in the master bedroom; and (3) a loaded 9-mm semi-automatic pistol with 11 rounds of ammunition, behind a safe in the master bathroom." *Garcia*, 590 F. App'x at 916. It is undisputed that the guns were lawfully owned and that they were purchased before the conspiracy began.

## II.

We review a district court's factual determinations for clear error. *Carillo-Ayala*, 713 F.3d at 87-88. We likewise generally review the court's application of the safety-valve standard to a detailed fact pattern for clear error. *Id.* We will not find clear error unless we are left with a definite and firm conviction that a mistake

has been made. *United States v. White*, 335 F.3d 1314, 1319 (11th Cir. 2003). Legal interpretations of the Sentencing Guidelines are reviewed *de novo*. *Carillo-Ayala*, 713 F.3d at 87. We also generally defer to the district court's credibility determinations because the court, as the fact finder, "personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

## III.

Garcia pled guilty to, among other offenses, conspiring to possess with intent to distribute over five kilograms of cocaine, which for Garcia carried a ten-year statutory mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II). To escape the mandatory minimum, Garcia sought relief through the "safety valve."[1] Congress passed the safety valve in 1994 to permit "a narrow class of defendants, those who are the least culpable participants in such offenses," to be sentenced without regard to the statutory mandatory minimum. *Carillo-Ayala*, 713 F.3d at 88 (quotation omitted); *see* 18 U.S.C. § 3553(f).

---

[1] Based on his offense level and criminal history, Garcia's guideline range initially was calculated at 108 to 135 months of imprisonment. Due to the mandatory minimum, his guideline range became 120 to 135 months. *See* U.S.S.G. § 5G1.1 & cmt. With the safety valve, Garcia's offense level would have been reduced by two, U.S.S.G. § 2D1.1(b)(17) (2014), his resulting guideline range would have been 87 to 108 months of imprisonment, and the district court could have sentenced Garcia below the mandatory minimum.

To obtain relief under the safety valve, the defendant must show by a preponderance of the evidence that he meets the five criteria set forth in § 3553(f). *Carillo-Ayala*, 713 F.3d at 90; *see* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a) (incorporating the safety-valve criteria). These criteria, in broad terms, limit safety-valve relief to defendants with negligible criminal records who have limited roles in non-violent offenses and then fully cooperate with the government. *See* 18 U.S.C. § 3553(f)(1)–(5). Only one of the five criteria is at issue in this case: whether Garcia "use[d] violence or credible threats of violence or possess[ed] a firearm or other dangerous weapon . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). Garcia did not use violence or credible threats of violence, so the only question is whether he possessed the three guns found in his home "in connection with" the drug-trafficking conspiracy.

A defendant possesses a firearm in connection with a drug offense if the firearm is in proximity to drugs or, if not in proximity, the firearm otherwise facilitates or has the potential to facilitate the drug offense. *Carillo-Ayala*, 713 F.3d at 92-96 ("A firearm in proximity to drugs is connected with a drug offense because it has the potential to be used as a weapon."). "The scope of the phrase 'potential to facilitate the offense' is limited to circumstances showing the firearm's availability for use as a weapon or the attempt to use the firearm in a manner that would facilitate the offense." *Id.* at 96. Thus, evidence that a

defendant used or could have used a firearm to protect his criminal activity is sufficient to show a connection between the firearm and the offense. *Id.* at 92 ("While other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened.").

In Garcia's first appeal, we upheld application of the firearm-possession enhancement under § 2D1.1(b)(1), concluding that the district court did not err in finding that Garcia failed to show that a connection between the guns and the cocaine was "clearly improbable." *Id.* at 919; *see Carillo-Ayala*, 713 F.3d at 90 (stating that, under § 2D1.1(b)(1), "the government benefits from a rebuttable presumption that a firearm, if present—just present, not present in proximity to drugs—is 'connected with the offense.' The defendant must disprove a connection with the drug offense to the extent of showing it is 'clearly improbable' they were symbiotic."). While the application of § 2D1.1(b)(1) does not preclude Garcia from obtaining safety-valve relief, he faces a difficult task of showing that, while the connection between the firearm and the offense was not "clearly improbable," it nonetheless was "not probable." *See Carillo-Ayala*, 713 F.3d at 91. We are not persuaded that Garcia has threaded that narrow needle.

First, to the extent Garcia contends that the government's proof was insufficient to establish any connection between the guns and the drug offenses, he is mistaken. As our prior decision in Garcia's case makes clear, the government's evidence was sufficient to show that "the guns were located at the site of the offense conduct," even if the guns did not leave the house and the drugs or drug proceeds did not enter the house. *Garcia*, 590 F. App'x 918-19. And despite the distinct locations, the guns had the potential to facilitate the offense because Garcia "could have used the firearms in his house to protect the drugs or the drug money on his property, regardless of whether they were also located inside the house." *Id.* at 919. Thus, the evidence sufficiently shows that Garcia possessed the guns in connection with the drug offenses because the guns were available for use as a weapon.[2] *See Carillo-Ayala*, 713 F.3d at 95-96.

Garcia bore the burden on remand of establishing that such a connection, though possible, was not probable. *Id.* at 91; *id.* at 96 ("[T]he safety valve is unavailable unless the defendant negates the proof [of a connection] by a preponderance of the evidence, or unless the government precludes relief by proving the fact by a preponderance of the evidence."). Garcia attempted to meet this burden through his own testimony. He testified that there was no connection

---

[2] Garcia's assertion that he did not "possess" the firearms at issue was raised for the first time in his reply brief, so it is not properly before us. *See United States v. Britt*, 437 F.3d 1103, 1104 (11th Cir. 2006). In any case, we previously held that Garcia did possess the guns at issue.

between the firearms in his house and his drug-trafficking activities outside his house. In particular, he explained that all of the drug transactions took place outside of his house on the farm property, that he sold the drugs he received almost immediately and then delivered the proceeds to his supplier shortly thereafter, that any drugs or drugs proceeds—for the short length of time there were on his property—were kept in his truck and did not enter his house, and that his co-conspirators never entered his house.

However, the district court determined that Garcia's testimony was not credible. In particular, the court found it implausible that Garcia would protect with guns the $23,000 in cash found in a safe inside his house, which Garcia claimed was for his livestock business, but leave unprotected the drugs and $30,000 in drug proceeds Garcia kept, however briefly, in his truck on the property. Moreover, with respect to Garcia's contention that he owned the guns to lawfully protect his property and family, having been robbed previously in connection with his livestock business, the district court concluded that that defense was unavailing because Garcia failed to show why he would not also keep the guns to protect the drugs or drug money on his property. *See Garcia*, 590 F. App'x at 919; *see Carillo-Ayala*, 713 F.3d at 92 ("[A] defendant aware of the weapon's presence will think of using it if his illegal activities are threatened."); *cf. United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998) (rejecting a

defendant's contention that the connection between his gun and the drug offense was "clearly improbable" because he possessed the firearm for his job as a security guard). In light of the district court's credibility determination, which Garcia does not contest, we cannot conclude that Garcia met his burden of showing that a connection between the guns and the drug offenses was "not probable." *Carillo-Ayala*, 713 F.3d at 91; *Ramirez-Chilel*, 289 F.3d at 749.

To the extent that Garcia contends that the government failed to show that he possessed the guns "in furtherance of" his drug-trafficking activities, his argument is unavailing because "in furtherance of" is a higher evidentiary standard than "in connection with."[3] *Carillo-Ayala*, 713 F.3d at 96. We drew the distinction between the two standards as follows in *Carillo-Ayala*:

> [T]he presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to show possession in furtherance, that is, to show the firearm was possessed to advance or promote the commission of the underlying offense. But the presence of a gun within a defendant's dominion and control during a drug trafficking offense ordinarily will suffice to show possession during and in relation to the offense and, therefore, that the defendant possessed the firearm in connection with the offense.

---

[3] Additionally, as previously stated, the government did not bear the burden of showing a connection on remand. Rather, it was Garcia's burden to show the lack of a connection by a preponderance of the evidence. *See Carillo-Ayala*, 713 F.3d at 90.

*Id.* (citations, footnote, and internal quotation marks omitted). Here, the evidence was sufficient for the court to find that Garcia possessed the guns in connection with the offenses, even if he did not possess the guns in furtherance of the offenses.

In light of the district court's credibility determination and our prior decision in this case, we are not left with a definite and firm conviction that the district court erred in concluding on remand that Garcia had failed to show that he was eligible for safety-valve relief. *See Carillo-Ayala*, 713 F.3d at 87-88; *White*, 335 F.3d at 1319. Therefore, we **AFFIRM** Garcia's sentence.